# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,            :
                             :      ID No. 9503016771
v.                           :      In and For Kent County
                             :
LEVAUGHN WALKER,             :
                             :
Defendant.                   :

## ORDER

Submitted: January 17, 2017
Decided: February 8, 2017

On this 8th day of February 2017, having considered Defendant's Motion for Modification of Sentence, and the State's response, it appears that:

1.     In March 1995, 16-year old Petitioner Levaughn Walker ("Mr. Walker") was charged with the murder of Nicole Mosley.   A jury found Mr. Walker guilty of Murder in the Second Degree, Possession of a Deadly Weapon During the Commission of a Felony, and Misdemeanor Theft.   On April 18, 1996, the Superior Court sentenced Mr. Walker to a combined 38 years of incarceration and then decreasing levels of probation.   To date, Mr. Walker has been incarcerated for nearly twenty two years of his thirty eight year sentence.   He now petitions the Court for a reduction of his prison sentence because he was a juvenile at the time of the offense.

2.     After Mr. Walker was convicted and sentenced, the United States Supreme Court issued its decision in *Graham v. Florida*.[1]     In the *Graham* case, the Court held that the Eighth Amendment prohibits a court from sentencing a juvenile

---

[1]  560 U.S. 48 (2010).

to life without the possibility of parole for a non-homicide crime.[2]   There, the Court provided, in the context of such sentences, that a juvenile offender must be given the opportunity to demonstrate growth and maturity.[3]   Following the *Graham* case, the United States Supreme Court decided *Miller v. Alabama*.[4]   There, the Court held that mandatory sentences of life in prison without the possibility of parole for homicide offenses committed by those under the age of eighteen violate the Eighth Amendment's prohibition against cruel and unusual punishment.[5]   These Supreme Court decisions acknowledge that juveniles are fundamentally different from adults for purposes of sentencing and those differences make them generally less culpable.[6] In this regard, the Supreme Court also emphasized the need for these offenders to have the opportunity to show growth and maturity upon reaching the age of majority, which in some circumstances, should weigh in favor of their early release.[7]

3.    In order to ensure the constitutionality of Delaware's sentencing scheme, Delaware's General Assembly amended 11 *Del. C.* § 4204A on June 4, 2013 to address the confinement of youth convicted in the Superior Court.[8]   That statute provides a mechanism to reassess lengthy juvenile sentences.   In reflection of this statutory change and the Supreme Court's direction, the Delaware Sentencing

---

[2] *Id.* at 74–75.

[3] *Id.* at 79.

[4] 132 S.Ct. 2455 (2012).

[5] *Id.* at 2464.

[6] *Id.* at 2464.

[7] *Id.* at 2469.

[8] 79 Del. Laws ch. 37, sec. 4 (2013) (codified at 11 *Del. C.* § 4204A).

Accountability Commission ("SENTAC") amended its Benchbook to reflect that juveniles require different sentencing considerations.[9]

4. Mr. Walker seeks to modify his sentence pursuant to 11 *Del. C.* § 4204A and Superior Court Criminal Rule 35A. Specifically, he seeks relief from his remaining term of incarceration and requests release into the community through the Way Home reentry program in Sussex County. As Mr. Walker is petitioning the Court for a sentence modification, he bears the burden of providing the Court with sufficient evidence to justify an evidentiary hearing on this matter and ultimately bears the burden to establish that he is entitled to a sentence modification. The statute at issue, 11 *Del. C.* § 4204A, provides that

> any offender sentenced to an aggregate term of incarceration in excess of 20 years for any offense or offenses other than murder first degree that were committed prior to the offender's eighteenth birthday shall be eligible to petition the Superior Court for sentence modification after the offender has served 20 years of the originally imposed Level V sentence.

5. Since Mr. Walker committed his crimes at the age of sixteen, was sentenced to more than twenty years of incarceration for crimes other than Murder First Degree, and has served more than 20 years of the imposed Level V sentence, he is statutorily entitled to petition the Superior Court for a sentence modification. Superior Court Criminal Rule 35A controls the process for review of such petitions. This Rule recognizes the Court's discretion to grant or deny the modification request.[10] Furthermore, the Rule provides for the Court to consider the motion "without presentation, hearing or argument unless otherwise ordered by the court."[11]

---

[9] Delaware Sentencing Accountability Commission Benchbook, Exceptional Sentences (effective 2013).

[10] Superior Court Crim. R. 35A (d)(2).

[11] *Id.* at 35A(d)(1).

Rule 35A makes it clear that it is a discretionary matter for the Court to determine (1) whether a hearing is appropriate and (2) whether to grant a sentence reduction.

6.      In Mr. Walker's Motion for Modification of Sentence, he asks the Court to consider the mitigating factors outlined in the *Miller* decision as well as the SENTAC Benchbook's enumerated factors.[12] In furtherance of his motion, a forensic psychiatrist examined Mr. Walker to assist the Court in considering these relevant factors.

7.      In response, the State argues that a hearing is unnecessary to consider Mr. Walker's petition for a sentence modification and that the Court should decide this matter solely on the basis of Mr. Walker's written motion and the State's response. The State argues that the sentencing court, in imposing its original sentence, considered the factors later identified in *Miller* and the SENTAC Benchbook. Accordingly, the State asserts that there is no reason for the Court to grant a hearing on the motion.

8.      Here, the Court has discretion to grant a sentence modification pursuant to 11 *Del. C.* § 4204A and Rule 35A when the offender shows sufficient growth, maturity or other such mitigating factors. Mr. Walker's motion attempts to demonstrate the presence of mitigating factors including growth and maturity by emphasizing a lack of prison disciplinary infractions over the last ten years as well as his participation in prison education programs. The written submissions, however,

---

[12] The Court, in *Miller*, took into consideration that juveniles "are more vulnerable . . . to negative influences and outside peer pressures, including from their family and peers, they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And because a child's character is not well formed as an adult's his traits are less fixed and his actions are less likely to be evidence of irretrievable depravity." 132 S.Ct. 2455, 2458 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 570) (citation omitted). The SENTAC Benchbook instructs sentencing judges to consider the age and developmental attributes, family and home environment, familial and peer pressure, mental health and medical history, academic and learning capacity, circumstances of the offense/juvenile's participation, level of sophistication, rehabilitation, and other factors.

4

evidence that Mr. Walker has accumulated serious prison violations well into adulthood. Furthermore, taking responsibility for one's actions is a significant factor evidencing growth and maturity. After becoming an adult, Mr. Walker consistently failed and continues to fail to take full responsibility for Ms. Mosley's murder. Accordingly, for these reasons and those that follow, the Court will deny the motion without a hearing.

9. First and foremost, after reviewing the sentencing transcript, there is no evidence that the sentencing judge imposed the thirty-eight year sentence with the belief that Mr. Walker's character exhibited irretrievable depravity or that he was incapable of being rehabilitated. Furthermore, the sentencing judge considered many of the factors outlined in *Miller* and those subsequently articulated in the SENTAC Benchbook. Namely, he acknowledged the hardships that Mr. Walker faced throughout his life including his psychological problems. The judge also referenced the pre-sentence report that outlined Mr. Walker's family history including the traumas he suffered. The report also recognized his education level as well as his physical and mental condition. This Court is satisfied, from a review of the transcript and presentence report, that the sentencing judge considered the factors later contemplated in *Miller* and the SENTAC Benchbook.

10. Nevertheless, in a petition such as this, the Court should be concerned about providing the juvenile offender the ability to show growth and maturity.[13] Showing growth and maturity rightfully weighs in favor of granting a sentence modification. However, in the particular circumstances of this case, to date, Mr. Walker does not cite sufficient evidence to establish that he has made adequate strides toward those goals.

---

[13] *E.g. Graham v. Florida*, 560 U.S. 48, 79 (2010).

11. One factor that can show substantial growth and maturity is taking responsibility for one's actions. Mr. Walker, who is now 38 years old, continues to fail to take full responsibility for the murder of Ms. Mosley as evidenced by the fact that he continues to communicate different versions of what took place. These varying versions, all of which minimize his responsibility, continue well into his adult years.

12. The first time Mr. Walker conveyed his version of the murder was at the time of his arrest in 1995 when he was 16 years old. At that time, Mr. Walker informed police that he accidently stabbed Ms. Mosley in self-defense. He claimed that Ms. Mosley prompted her dog to attack him. In that version, in an attempt to get the dog away from him, Mr. Walker stated that he grabbed a knife and while swinging the knife at the dog stabbed Ms. Mosley in the abdomen. After this initial blow, Mr. Walker recounted that something in the back of his mind told him to finish her off, so he stabbed her again in the neck.

13. At trial, Mr. Walker, who was 17 years old at that time, changed his version regarding the incident. He claimed that Ms. Mosley was holding $23,000 for him and owed over $40,000 to the "foot soldiers" who were a part of the Junior Black Mafia.[14] Mr. Walker stated that he and four "foot soldiers" went to the victim's home that day to get their money. Mr. Walker claims that he went upstairs to look for the money the victim was holding for him and the "foot soldiers" stayed with Ms. Mosley downstairs. According to Mr. Walker, when he returned, the "foot soldiers" had murdered the victim and fled.

14. In 2007, when Mr. Walker was well into adulthood, he continued to deny responsibility for the crime. During that period, while at James T. Vaughn

---

[14] In this version of the offense, both Mr. Walker and Ms. Mosley were members of the Junior Black Mafia.

Correctional Center, he confronted a family member of the victim and told her that someone else had committed the murder. He was 28 years old at the time of that statement.

15. Unfortunately, his changing versions continue to the present. In 2015, Dr. John Northrop, a forensic psychiatrist, examined Mr. Walker in support of the present petition. At that point, Mr. Walker was 36 years old. When describing the murder, Mr. Walker claimed that he had given Ms. Mosley money and drugs to hold for him. Before going to her home with three of his drug associates, he consumed alcohol, cocaine, and altered marijuana. Upon arriving at her home, he went into her room to search for his money. When he could not find what he was looking for, he went downstairs and "wailed on her." He mentioned that he grabbed the knife and stabbed her. He also mentioned that other people participated in the murder, but that he was the only one who had a weapon. When discussing the crime with Dr. Northrop, Mr. Walker expressed remorse, and Dr. Northrop characterized his statements as evidence of Mr. Walker taking responsibility for his actions.

16. Finally, in December 2016, at the request of the State, Dr. Robert Thompson, a forensic psychologist, examined Mr. Walker who was 38 years old at the time of this statement. During that examination, he again changed his version of events. Namely, he told Doctor Thompson that he received a ride to Ms. Mosley's home but those who provided him transportation played no role in the murder. Mr. Walker stated he intended to rob her. Once he was inside Ms. Mosley's home, the two allegedly used cocaine together. Afterward, when she refused to let him take her car, he grabbed a knife. Mr. Walker then claimed in this version that he intended just to scare her into surrendering the car. However, when Ms. Mosley saw him grab the knife, she grabbed his hand. Mr. Walker claims that a struggle ensued, which resulted in him stabbing her. After the initial wound, Ms. Mosley kept fighting so Mr. Walker "kept stabbing." When she tried to flee the

7

house, Mr. Walker pulled her back and stabbed her additional times. He then went upstairs to find more drugs. He was unable to find any and was worried that he was taking too long. Therefore, he disconnected the home phone, took the answering machine tape, and left.

17. Each time Mr. Walker recounted the murder, he had a different version of events. Even well into adulthood, he provided markedly different versions on three different occasions. The two most recent of Mr. Walker's statements about the murder are the most troubling as Mr. Walker provided those differing accounts to psychologists examining him in furtherance of this motion. Namely, despite the fact that he knew the psychologists were examining him for purposes of this motion, he was still unable to provide a single, truthful account of the event. Mr. Walker's various versions of what occurred on the day he murdered Ms. Mosley evidences that Mr. Walker has not developed the growth and maturity necessary to justify a sentence modification. The Court considers his failure to accept responsibility to be a factor that increases the chance he could reoffend.

18. In support of his petition, Mr. Walker also emphasizes that there is no evidence of any disciplinary violations since his relocation to a prison in New Jersey. Also, he emphasizes his participation in a number of education and training programs offered in the prison system and has provided proof that he completed these programs. While Mr. Walker claims that he has not committed any violations since moving to a New Jersey prison, he makes this assertion without providing any documentation supporting this claim. Furthermore, he is not requesting the Court to request a DOC certification (or more aptly a certificate from the New Jersey facility) regarding his behavior in prison despite recognizing that such a request would be available to him.[15] The Court does not find Mr. Walker's statement

---

[15] Mr. Walker maintains that a certification by DOC is only required when seeking a sentence modification pursuant to 11 *Del. C.* § 4213. He asserts that a DOC certification is not required

8

regarding his good behavior to be sufficient evidence of growth and maturity to justify a hearing or ultimately a sentence modification.

19. Moreover, after reviewing his correctional history since reaching adulthood, the Court does not find that his behavior when evaluated in its totality justifies a hearing or ultimately a reduced sentence. While Mr. Walker points to his allegation that he has not incurred additional prison violations since relocation to New Jersey, he fails to adequately acknowledge that he committed serious violations prior to leaving Delaware. In 2007, when Mr. Walker was 29 years old, he received a disciplinary report for threatening to kill a guard while making a stabbing motion with an altered pen. In 2003, when Mr. Walker was 24 years old, he received a disciplinary report for trying to incite other inmates to riot. There, he drew a knife on the bottom of the page he used to communicate with other inmates for purposes of instigating the riot. In 1999, when Mr. Walker was 21 years old, he received a disciplinary report for threatening to punch a guard. One month after Mr. Walker turned 21, he was convicted of assault and served a 40-day term in isolation. Also in 1999, before Mr. Walker turned 21, prison officials cited him for trying to incite a riot among other inmates. In the documents submitted by the State, Mr. Walker is also shown to have had several other infractions while in prison spanning from the very beginning of his incarceration through the time he was transferred to a prison in New Jersey.

20. As is consistent with his varied positions regarding the murder, Mr. Walker also fails to take full responsibility for these violations. During his examination with Dr. Thompson, Mr. Walker told the doctor that he was responsible

---

under a sentence modification pursuant to Rule 35A or 11 *Del. C.* § 4204A, and therefore, he is not seeking the Court to order or request such a certification. That may be, but that it is procedurally permitted in the instant motion and that he has chosen not to request it, is an additional factor relevant to the Court's denial of this motion.

for most of the infractions. However, he also told the doctor that he should consider the context in which the infractions occurred. Namely, Mr. Walker blamed a number of them on the fact that he was in a facility where the victim's family members worked.

21. While it is clear that Mr. Walker has failed to take full responsibility for his actions, it is also evident to the Court that Mr. Walker has recently shown some growth. Namely, he is taking college classes in order to obtain his associates degree. Furthermore, Mr. Walker has obtained several certificates from the prisons evidencing completion of various training and workshops. The college classes and the completion of various life skills workshops are an indication that Mr. Walker has gained a certain level of maturity and growth. However, many of the certificates provided by Mr. Walker predate his relocation to New Jersey. A number of these certificates are dated in and around the time he was actively accumulating the aforementioned prison disciplinary record, well into his late twenties. Under the circumstances of this case, the Court finds that evidence of Mr. Walker's growth based on his training and education to be insufficient to warrant a reduction in his original sentence.

22. Finally, the Court must take into account the interest of public safety when considering a motion for a sentence reduction that would lead to a violent inmate's early release. With regard to the public safety risk, Dr. Thompson provided the only opinion regarding Mr. Walker's risk level. In his report, he concluded that Mr. Walker is a moderate risk of violent and criminal recidivism in the community. The Court finds Dr. Thompson's opinion credible. As there is no contrary evidence regarding a risk assessment for the Court to consider, the moderate risk of violent and criminal recidivism also weighs into the Court's decision.

23. After a review of the sentencing transcript, the Court finds that the sentencing judge imposed a sentence after taking into consideration the factors later outlined in *Miller* and the SENTAC Benchbook and not because of a belief that Mr. Walker was irreparably depraved. Furthermore, Mr. Walker has not evidenced personal growth to the extent necessary to support a sentence reduction. Moreover, Mr. Walker continues to pose a risk to the community of violent criminal recidivism. These factors all weigh in favor of denying Mr. Walker's motion. After reviewing the petition, its supporting materials, the State's response, and the State's supporting materials, the Court is satisfied in making this decision without the need for an evidentiary hearing.

Wherefore, Mr. Walker's Motion for Modification of Sentence is DENIED.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge